UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| SHANGHAI BREEZE TECHNOLOGY CO., LTD. | CIVIL ACTION NO. 22-2038 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| GRAVOIS ALUMINUM BOATS, LLC D/B/A METAL SHARK ALUMINUM BOATS | MAGISTRATE JUDGE AYO |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 59) filed by Defendant Gravois Aluminum Boats, LLC D/B/A Metal Shark Aluminum Boats ("Metal Shark"). Plaintiff Shanghai Breeze Technology Co., Ltd. ("Shanghai Breeze") opposed. See Record Document 67. Metal Shark replied. See Record Document 68. For the reasons stated below, Metal Shark's Motion for Summary Judgment (Record Document 59) is **GRANTED IN PART and DENIED IN PART.**

**FACTUAL BACKGROUND**

This case arises from two vessel construction contracts executed in 2019 between Shanghai Breeze and Metal Shark. See Record Document 1 at 2. Shanghai Breeze is a corporation located in Shanghai, China, and Metal Shark is a Louisiana boat manufacturer with its principal place of business in Iberia Parish, Louisiana. See id. at 1.

On February 21, 2019, the parties executed a contract for Metal Shark to construct a vessel referred to as "21 Relentless" for a stated price of $216,156.00, for which Shanghai Breeze alleges it paid a 50% deposit. See id. at 2. On August 8, 2019, the parties entered a second contract for construction of a vessel referred to as "29 Defiant" for $381,411.00, which Shanghai Breeze alleges it paid in full. See id.

Metal Shark built the 29 Defiant, and the vessel departed the United States for Asia in October 2019. See Record Document 59-4 at 39. Shortly after the vessel left the United States, the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"), issued a Redelivery Order directing Metal Shark to reroute and return the 29 Defiant to the United States. See id. at 40. BIS subsequently issued a Detention Letter instructing Metal Shark to maintain custody and control of the 29 Defiant until further instruction. See id. at 45. Metal Shark complied and retained possession of the vessel. See Record Document 59-2 at 13.

Construction of the 21 Relentless never proceeded beyond preliminary steps. See id. Metal Shark asserts that once it received the Detention Letter from BIS regarding the 29 Defiant, it immediately halted operations on the 21 Relentless and ceased all contact with Shanghai Breeze. See id. However, Metal Shark contends it incurred some expenses for the 21 Relentless relating to materials and labor. See id.; see also Record Document 59-4 at 47–58.

Shanghai Breeze alleges that Metal Shark breached both contracts by failing to deliver the vessels, failing to refund the payments made, and failing to provide documentation or an accounting of the vessels' whereabouts. See Record Document 1 at 2–3. Metal Shark disputes liability, contending that the intended export of the vessels became illegal due to Ge Song Tao's criminal conviction[1] and Shanghai Breeze's placement on the federal Entity List. See Record Document 59-3 at 3–12.

---

[1] The record does not clearly establish the precise corporate role held by Ge Song Tao within Shanghai Breeze. The summary judgment filings show that he executed a sworn declaration on behalf of the company (Record Document 67-2) and participated in the underlying transactions, and Shanghai Breeze characterizes him as "a principal of the plaintiff." Record Document 67 at 5. Metal Shark refers to Ge Song Tao as an "owner" of Shanghai Breeze. See Record Document 68 at 11. Regardless of title, the undisputed evidence shows that Ge Song Tao acted as a representative of Shanghai Breeze in connection with the contracts at issue.

The criminal charges against Ge Song Tao, as detailed in the 2023 Report and Recommendation ("R&R") (Record Document 38), stemmed from an unrelated federal prosecution in the Middle District of Florida. See id. at 4. In October 2019, shortly after the 29 Defiant was shipped, federal prosecutors charged Ge Song Tao and several co-defendants in a multi-count indictment involving the attempted export of seven inflatable vessels and associated engines from a different U.S. manufacturer using false end-user information. See id. at 4–6. Ge Song Tao pled guilty in November 2020 to conspiracy to violate export laws and to smuggling those inflatable vessels and was sentenced in July 2021. See id. at 7. These charges did not involve Metal Shark, the 21 Relentless, or the 29 Defiant, and concerned entirely different vessels from a different manufacturer. See id. at 7.

Although Metal Shark had already shipped the 29 Defiant at the time that the criminal charges were brought, BIS issued a Redelivery Order requiring Metal Shark to maintain possession of the 29 Defiant. See Record Document 59-4 at 39–40. In March 2020, BIS issued a Detention Letter requiring Metal Shark to remain in possession of the 29 Defiant "until [it] receive[s] further instructions from [BIS]." Record Document 45. In September 2020, William Bookout, a Special Agent at BIS ("Special Agent Bookout"), emailed Chris Allard ("Allard") with Metal Shark and stated that the 29 Defiant was to be kept from export pending the finalization of the investigation into Ge Song Tao. See Record Document 59-4 at 46. Special Agent Bookout further informed Allard that Metal Shark was permitted to modify or deconstruct the vessel and repurpose its materials for other projects, provided that adequate documentation was maintained to demonstrate that the vessel had not been exported in violation of the detention order. See id. Metal

3

Shark never delivered the boats or refunded any payments to Shanghai Breeze. See Record Document 1 at 2.

Shanghai Breeze filed this action in July 2022, asserting claims for breach of contract, conversion, unfair trade practices, unjust enrichment, and an accounting. See id. at 3. Metal Shark answered and asserted a counterclaim for damages. See Record Document 18.

In 2023, Metal Shark, then represented by prior counsel, filed an initial motion for summary judgment (Record Document 30) arguing that the 2023 BIS "Order Denying Export Privileges" (the "Denial Order") (Record Document 59-3 at 72) issued to Ge Song Tao rendered the 2019 vessel contracts illegal and unenforceable. Magistrate Judge Ayo issued an R&R rejecting that argument and concluding that the contracts were not facially illegal, that the Denial Order had no retroactive effect on the 2019 agreements, and that even if the contracts were null, La. Civ. Code art. 2033 would require restoration of the status quo ante. See Record Document 38. This Court adopted the R&R. See Record Document 44.

Following additional discovery, Metal Shark, now represented by new counsel, filed the present Motion for Summary Judgment on October 9, 2025, reasserting and expanding its nullity and impossibility arguments, contesting Shanghai Breeze's status as a contracting party, and seeking judgment on its counterclaim. See Record Document 59. Shanghai Breeze filed an opposition (Record Document 67), and Metal Shark filed a reply (Record Document 68). The matter is now ripe for review.

## LAW AND ANALYSIS

### I. Summary of the Arguments

Metal Shark's Motion for Summary Judgment (Record Document 59) advances five principal arguments. First, it contends that Shanghai Breeze is not the contracting party because the agreements list the buyer as "Breeze Technology," and some payments were made by an affiliated entity, Shanghai Breeze Technology Jiangsu. See Record Document 59-2 at 10, 17–18. Metal Shark also argues that Shanghai Breeze never made the progress payment required to trigger construction of the 21 Relentless. See id. at 11.

Second, Metal Shark argues that both vessel contracts are absolutely null under La. Civ. Code art. 2030 because the transactions allegedly had an unlawful cause. See id. at 18–19. Metal Shark points to BIS findings, federal criminal proceedings involving Ge Song Tao, and Shanghai Breeze's subsequent placement on the Entity List as evidence that the vessels were intended for sale to the Chinese military or prohibited end users. See id. at 19–20.

Third, Metal Shark asserts that, even if the contracts were initially valid, they were later dissolved by impossibility under La. Civ. Code arts. 1873, *et seq.* Metal Shark argues that the BIS Redelivery Order and Detention Letter made delivery of the 29 Defiant illegal and impossible. See Record Document 59-2 at 21–22.

Fourth, Metal Shark argues that even if Shanghai Breeze could establish contractual standing and even if the contracts are not absolutely null, Shanghai Breeze breached the contract through a failure to accept delivery when it could no longer legally take possession of the boats. See id. at 25. Additionally, Metal Shark argues that Shanghai Breeze is barred from recovering any payments from Metal Shark under La.

Civ. Code art. 2033. See id. at 26. Metal Shark asserts that Shanghai Breeze, through its representative, Ge Song Tao, caused the federal investigation and the BIS intervention that prevented delivery, and therefore acted in bad faith rendering the contracts null. See id. at 27–28. Additionally, Metal Shark argues that Shanghai Breeze cannot recover payments from Metal Shark because it knew at the time of contracting that the purpose was illegal, which is evidenced by the web pages showing that Shanghai Breeze was marketing some boats (not the boats at issue) for military use. See id. at 27.

Fifth, Metal Shark seeks summary judgment on its counterclaim for $567,997.49 in damages, asserting that Shanghai Breeze's alleged conduct caused Metal Shark to incur substantial losses. See id. at 28–30. Metal Shark itemizes costs associated with the redelivery, detention, storage, and refurbishment of the 29 Defiant, as well as materials, labor, and overhead for the 21 Relentless. See id. at 30.

Shanghai Breeze opposes the motion in full. See Record Document 67. Shanghai Breeze argues that it was the contracting party. See id. at 3. Further, it asserts that Metal Shark knew that it was contracting with Shanghai Breeze and that Metal Shark admitted as much in earlier filings. See id. Shanghai Breeze denies any unlawful purpose, contends that Metal Shark has no evidence connecting these contracts to prohibited end users, disputes the applicability of impossibility, and argues that La. Civ. Code art. 2033 mandates restoration rather than dismissal even if nullity applies. See id. at 5–7. Shanghai Breeze further asserts that the 2023 R&R supports the contracts' legality and has preclusive effect, and it challenges Metal Shark's damages as speculative and inadequately supported. See id. at 6, 8–11.

Metal Shark filed a reply asserting that the 2023 R&R has no preclusive effect on the current motion for summary judgment and reurging its arguments from the motion. See Record Document 68.

## II.     Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id. If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the

record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." Id.

## III. Analysis

### a. Effect of the Prior R&R

As an initial matter, the Court addresses Shanghai Breeze's contention that the 2023 R&R adopted by this Court precludes consideration of the arguments raised in Metal Shark's present motion for summary judgment. See Record Document 67 at 6. That contention is misplaced. The 2023 R&R resolved only a narrow issue presented in Metal Shark's earlier motion: whether the 2023 BIS Order Denying Export Privileges issued to Ge Song Tao retroactively rendered the 2019 contracts illegal and therefore absolutely null. See Record Documents 38 & 59-3 at 72. Magistrate Judge Ayo concluded that the Denial Order had no retroactive effect, that the contracts were not facially illegal when executed, and that even if the agreements were null, La. Civ. Code art. 2033 would require restoration of the status quo ante rather than dismissal of Shanghai Breeze's claims. See Record Document 38. This Court adopted the R&R in full. See Record Document 44.

The prior R&R did not address any of the distinct issues now presented. It did not consider whether Shanghai Breeze was the true contracting party; whether the contracts were absolutely null at the moment of formation; whether performance later became impossible under La. Civ. Code arts. 1873, *et seq.*; whether the March 2020 Detention Letter (Record Document 59-4 at 45) or the September 2020 BIS email (Record Document 59-4 at 46) affected the parties' obligations; whether La. Civ. Code arts. 2003 or 2033 bar recovery based on alleged bad faith; or whether Metal Shark is entitled to

damages on its counterclaim. Because the earlier ruling resolved none of the issues now raised and addressed only the retroactive effect of a single administrative order, the prior R&R has no preclusive effect on the present motion.

### b. Shanghai Breeze as a Contracting Party

Metal Shark first argues that Shanghai Breeze is not the contracting party because the written agreements identify the buyer as "Breeze Technology" and because payments were made by an affiliated entity. See Record Document 59-4 at 23–30, 35–38. This argument cannot support summary judgment.

The undisputed evidence reflects that Metal Shark communicated with Shanghai Breeze's representative, Ge Song Tao, and never contested the identity of its counterparty until long after litigation began. Additionally, Metal Shark brought a counterclaim against Shanghai Breeze which stated that "Gravois entered into an agreement with Plaintiff for the sale of the Vessel …." Record Document 18 at 6. This statement is a judicial admission precluding Metal Shark from now asserting that Shanghai Breeze is the improper party. "[F]actual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." White v. ARCO/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir. 1983). Even without a judicial admission, contracting under a trade name such as "Breeze Technology" does not defeat privity. Louisiana courts have held that a corporation can do business under an assumed name. See MAS Nursing, Inc. v. Burke, 523 So. 2d 909, 911–12 (La. App. 3d Cir. 1988), writ denied, 530 So. 2d 570 (La. 1988); see also Natl. Oil Works v. Korn Bros., 114 So. 659 (La. 1927).

Finally, the fact that some payments came from an affiliate does not alter the identity of the obligor. Louisiana Civil Code article 1855 states that "[p]erformance may be rendered by a third person …" and that such performance "effects subrogation only when so provided by law or by agreement." Viewing the evidence in the light most favorable to Shanghai Breeze, a reasonable factfinder could conclude that Shanghai Breeze was indeed the contracting party. Summary judgment on this issue is **DENIED**.

### c. Illegal Cause, Impossibility, and Recovery under La. C.C. art. 2003

Metal Shark advances several related theories: absolute nullity for illegal cause under La. Civ. Code art. 2030, impossibility of performance under articles 1873, *et seq.*, and limits on recovery under article 2003. See Record Document 59. All of these arguments hinge on overlapping factual determinations that cannot be resolved on summary judgment.

Under article 2030, "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." The summary judgment record does not establish that the agreements had an unlawful purpose. The 2023 R&R expressly found that the federal prosecution of Ge Song Tao involved different vessels from a different manufacturer, not the two Metal Shark vessels at issue here. See Record Document 38 at 4–7. As the R&R observed, "[t]he most plausible characterization is that OEE did not conclude that any aspect of the export of the completed vessel violated any export regulation." Id. at 14. Because there is no evidence that the sale of the 29 Defiant or the 21 Relentless was illicit or immoral, the Court cannot find that the contracts were absolutely null under La. Civ. Code art. 2030. See generally River Rental Tools, Inc. v.

Smith Power Solutions, LLC, 342 So. 3d 1052, 1058 (La. App. 4 Cir. 2022) (rejecting absolute nullity argument because the sale of engines was neither illicit or immoral.).

Metal Shark relies heavily on online marketing materials showing that Shanghai Breeze or an affiliated company advertised certain vessels for military use. See Record Documents 59-3 at 74–82. However, these screenshots are not proof that the specific boats ordered from Metal Shark at issue here were being marketed in that way. See id. Metal Shark effectively asks the Court to conclude that Shanghai Breeze entered the contracts with the criminal intent to unlawfully sell the vessels, and that this alleged bad faith both renders the contracts absolutely null and bars Shanghai Breeze from recovering any payments. These arguments hinge on factual disputes, including questions of intent and credibility, that cannot be resolved at the summary judgment stage. Determining whether Shanghai Breeze had any unlawful purpose is a matter for the factfinder, not for resolution on summary judgment.

Metal Shark argues, in the alternative, that even if the contracts were valid when made, performance later became impossible pursuant to La. Civ. Code arts. 1873, *et seq.* Article 1873 provides that "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." Article 1875 defines a fortuitous event as "one that, at the time the contract was made, could not have been reasonably foreseen." Article 1876 further explains that when an "entire performance owed by one party has become impossible because of a fortuitous event, the contract is dissolved. The other party may then recover any performance he has already rendered."

The evidence demonstrates that delivery of the 29 Defiant ultimately became impossible due to federal action. BIS issued a Redelivery Order in October 2019, followed

11

by a Detention Letter in March 2020, expressly prohibiting export of the vessel pending further instructions. See Record Document 59-4 at 40, 45. In September 2020, BIS Special Agent Bookout clarified that the vessel was to remain withheld from export, but that Metal Shark could modify or deconstruct the vessel and use the materials for other projects, provided that proper documentation was maintained. See Id. at 46. Government intervention like this would typically be seen as a fortuitous event causing impossibility of performance and resulting in restoration of the parties to their pre-contract state.

Metal Shark asserts in its defenses that the government intervention was unforeseeable and therefore constitutes a fortuitous event excusing Metal Shark's performance. See Record Document 59-2 at 22. However, in support of its counterclaim, Metal Shark argues that the same BIS intervention was not fortuitous for Shanghai Breeze because Ge Song Tao's prior illegal conduct caused the government's actions. See id. at 23. These positions are contradictory and cannot be reconciled. For an event to be fortuitous, it must be completely unforeseeable by both parties. If the government intervention was fortuitous, then La. Civ. Code arts. 1873 and 1876 would govern, resulting in dissolution with restoration. If, however, BIS acted as a foreseeable consequence of Shanghai Breeze's conduct, then the event would not be fortuitous as to Shanghai Breeze, and La. Civ. Code arts. 1873 through 1876 would not apply.

Whether BIS's intervention qualifies as a "fortuitous event" under La. Civ. Code art. 1875 is not a purely legal question that the Court can resolve on summary judgment. Determining whether an event was foreseeable or caused by a party's own conduct depends on factual determinations reserved for the jury. Those factual issues include, among others: the relationship between Ge Song Tao and Shanghai Breeze; whether Ge

Song Tao's criminal conduct involving entirely different vessels can be attributed to Shanghai Breeze; whether Shanghai Breeze knew or should have known of any export-control concerns at the time of contracting; and whether BIS's intervention was reasonably foreseeable to either party. See Record Documents 38 and 59.

These factual questions relate directly to fault, intent, knowledge, and causation, which are areas where courts consistently hold that summary judgment is inappropriate. See Van Winkle v. Rogers, 82 F.4th 370, 378 (5th Cir. 2023) (bad faith is a question of fact); see also In re Omega Protein, Inc., 548 F.3d 361, 367 (5th Cir. 2008) (fault is a factual issue); see also Gore v. State Farm Fire and Casualty Company, 2025 WL 2801390, at *6 (N.D.Miss., 2025) (foreseeability is a question of fact for the jury); see also Intl. Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265 (5th Cir. 1991) (state of mind is a fact question). A jury must determine these predicate facts before the Court can apply the appropriate legal rule.

Finally, Metal Shark invokes La. Civ. Code arts. 2003 and 2033 to argue that Shanghai Breeze cannot recover any payments it made to Metal Shark. Article 2003 provides that an obligor is not liable for damages when the obligee's bad faith caused the obligor's failure to perform. Article 2033 bars a party from recovering performance under an absolutely null contract if that party knew or should have known of the defect giving rise to nullity. Whether Shanghai Breeze acted in bad faith or knew of any alleged defect again turns on factual questions that cannot be resolved on summary judgment.

Taken together, Metal Shark's theories of illegal cause, impossibility, and bad faith all rest on a common set of factual predicates concerning intent, knowledge, foreseeability, and the relationship between Ge Song Tao and Shanghai Breeze. Those

issues cannot be resolved on summary judgment without weighing credibility and drawing inferences, which are tasks reserved for the trier of fact. Accordingly, the Court declines to make those findings at this stage, and Metal Shark's motion is **DENIED** as to all theories premised on illegal cause, impossibility, or La. Civ. Code arts. 2003 and 2033.

### d. Metal Shark's Counterclaim

Metal Shark seeks summary judgment on its counterclaim, asserting that it incurred more than $560,000 in redelivery, detention, storage, refurbishment, overhead, and labor costs associated with both the 29 Defiant and the 21 Relentless. See Record Document 59-2 at 28–30. Although some portion of these expenses may ultimately prove recoverable, the present record reflects factual disputes regarding the scope, necessity, and mitigation of the damages.

Under Louisiana law, the party asserting the breach of a contract bears the burden of proving damages resulting from that breach. See IV Waste, LLC v. Jim Hotard Properties, LLC, 400 So. 3d 1008, 1030 (La. App. 4th Cir. 2024), writ denied, 397 So. 3d 1222 (La. 2024). Additionally, "an injured party has a duty to mitigate his damages" in a breach of contract claim. Elliott v. Normand, 976 So. 2d 738, 745 (La. App. 5th Cir. 2008). Here, several categories of Metal Shark's claimed damages raise factual questions that cannot be resolved on summary judgment. For example, the record indicates that certain materials ordered for the vessels were later cancelled, and it is unclear whether Metal Shark actually incurred those costs. See Record Document 59-4 at 47–58. It is likewise unclear whether Metal Shark repurposed or reused components of the 29 Defiant or the 21 Relentless for other vessels and whether Metal Shark reasonably mitigated its losses after BIS expressly permitted it to modify the 29 Defiant in September 2020.

14

These unresolved factual questions preclude summary judgment. Metal Shark may ultimately recover some portion of its alleged expenses, but determining the extent of any such recovery requires credibility determinations and fact finding that must be presented to the trier of fact. Accordingly, Metal Shark's motion for summary judgment is **DENIED** as to its counterclaim for damages.

However, one category of damages is proven with sufficient certainty to warrant partial summary judgment: the cost of redelivering the 29 Defiant to Metal Shark in response to BIS's October 2019 Redelivery Order. The Redelivery Letter is contained in the record (Record Document 59-4 at 40), and Metal Shark submitted an invoice reflecting that it paid $18,686.76 to comply with that directive. See id. at 41. Shanghai Breeze offers no evidence disputing that Metal Shark incurred this cost or challenging the authenticity of the documentation. Because no genuine issue of material fact exists as to this specific expense, summary judgment is **GRANTED IN PART** as to the $18,686.76 that Metal Shark incurred for the 29 Defiant's redelivery.

e.  **21 Relentless Contract**

The 21 Relentless contract required Shanghai Breeze to tender a 25% initial deposit followed by an additional 40% payment before Metal Shark was obligated to commence construction. See Record Document 59-4 at 23–26. The payment ledger reflects that Shanghai Breeze paid $108,078.00 on June 6, 2019, representing 50% of the 21 Relentless contract price. See id. at 27. Shanghai Breeze states in its Complaint that this was the only payment intended to apply to the 21 Relentless and that it paid 50% of the contract price. See Record Document 1 at 2.

Because Metal Shark's obligation to begin construction was contingent upon receipt of the required progress payments, Shanghai Breeze's failure to remit the full amount due constituted nonperformance of an essential term of the contract. Under Louisiana law, a party who fails to perform a contractual obligation is in breach. See La. Civ. Code art. 1994. Accordingly, Metal Shark is entitled to summary judgment as to liability on its claim that Shanghai Breeze breached the 21 Relentless contract by failing to make the required payment. That finding, however, does not resolve the consequences of the breach.

Article 2013 provides that "[w]hen the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract," but the dissolution must be declared by the court or expressly provided in the contract. Under article 2015, an obligee may seek dissolution after giving the obligor notice to perform within a specified time. The present record does not establish whether Metal Shark ever provided such notice or whether the contract was dissolved prior to litigation.

If the contract was dissolved, article 2018 provides that the parties should be restored, as nearly as possible, to the situation that existed before the contract. Article 2018 further explains that when "partial performance has been rendered and that performance is of value to the party seeking to dissolve the contract, the dissolution does not preclude recovery for that performance …." Under these articles, Shanghai Breeze would be entitled to recover the $108,078.00 payment it made, subject to deduction for any damages Metal Shark can prove resulted from Shanghai Breeze's breach. See La. Civ. Code arts. 1994, 2013, 2018.

However, the amount of those damages cannot be determined at this stage. Metal Shark has submitted documents purporting to show material and labor costs associated with preliminary steps on the 21 Relentless, yet the record also reflects that a number of the purchase orders were later canceled. See Record Document 59-4 at 47–58. It is unclear which expenses were actually incurred and whether any materials were later reused in other projects. Questions regarding mitigation and the accuracy of Metal Shark's claimed costs are fact-intensive matters for the trier of fact. Additionally, the determination of whether Shanghai Breeze acted in good or bad faith, which may affect the scope of recoverable damages under La. Civ. Code arts. 1996 and 1997, presents questions of intent and credibility inappropriate for summary judgment.

Because the record does not establish whether the 21 Relentless contract was dissolved, and because genuine issues of material fact remain as to the amount of damages owed, the Court cannot grant summary judgment beyond the issue of liability. Metal Shark's motion is **GRANTED IN PART** to the extent it seeks a finding that Shanghai Breeze breached the 21 Relentless contract by failing to make the required payment, and **DENIED** in all other respects related to dissolution and damages.

### a. Notice of Objection to Reply Evidence

Shanghai Breeze filed an Objection to Summary Judgment Evidence (Record Document 69). Shanghai Breeze objects to the evidence included in Metal Shark's Reply (Record Document 68), including a Google Map screenshot (Record Document 68-1) and a web page capture (Record Document 68-2), as well as a quotation from a publication referenced in the Reply at page 7, footnote 26. See Record Document 69 at 1. The Court

acknowledges the objections, and this evidence was not considered in its decision-making.

## CONCLUSION

For the reasons stated above,

Metal Shark's Motion for Summary Judgment (Record Document 59) is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** with respect to the $18,686.76 incurred by Metal Shark for redelivery of the 29 Defiant and on the issue of Shanghai Breeze's liability for breach of the 21 Relentless contract. The Motion is **DENIED** on all other arguments, theories, and issues.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 5th day of December, 2025.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE