**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

SHANGHAI BREEZE
TECHNOLOGY CO LTD.

CIVIL ACTION NO. 22-2038

VERSUS

JUDGE S. MAURICE HICKS, JR.

GRAVOIS ALUMINUM BOATS
LLC D/B/A METAL SHARK
ALUMINUM BOATS

MAGISTRATE JUDGE AYO

**MEMORANDUM RULING**

Before the Court is the issue of potential conflicts of interest arising from Jones Walker LLP's ("Jones Walker") representation of Defendant, Gravois Aluminum Boats, LLC d/b/a Metal Shark Aluminum Boats ("Metal Shark"), in light of the firm's prior representation of non-party Ge Song Tao ("GST"), chairman and chief executive officer of Plaintiff Shanghai Breeze Technology Co., Ltd. ("Shanghai Breeze"). The Court raised the issue *sua sponte* on the morning of the scheduled bench trial and thereafter ordered briefing from the parties. See Record Document 86. Having considered the parties' submissions and the applicable law, the Court will allow current counsel for all parties to continue representation.

**FACTUAL BACKGROUND**

This litigation arises from two vessel construction contracts executed in 2019 between Shanghai Breeze and Metal Shark concerning vessels referred to as the "21 Relentless" and the "29 Defiant." See Record Document 1 at 2. Shanghai Breeze is a corporation located in Shanghai, China, and Metal Shark is a Louisiana boat manufacturer with its principal place of business in Iberia Parish, Louisiana. See id. at 1.

GST, an owner, officer, and principal of Shanghai Breeze, acted on behalf of Shanghai Breeze in connection with the transactions underlying this litigation. See Record Document 70 at 2 n.1. Although GST is not a named party, prior rulings in this matter have recognized that he acted as a representative, officer, and managing agent of Shanghai Breeze in connection with the contracts at issue. See Record Documents 70 and 84.

Before execution of the relevant contracts, GST retained attorney Edward Shohat ("Shohat") with Jones Walker's Miami office in connection with a federal criminal prosecution in the Middle District of Florida involving export-control and smuggling offenses. See Record Document 87 at 4. The criminal prosecution generally involved allegations relating to export activities involving marine vessels and engines. See id.; see also Record Document 70 at 3.

During that representation, Shohat sent a demand letter dated September 13, 2021, to Metal Shark regarding the vessel transactions that are now the subject of this litigation. See Record Document 88 at 21–22. In that correspondence, Shohat stated that he represented GST "through his company Breeze Technology" in connection with the "21 Relentless" contract and demanded repayment relating to that transaction. Id. The letter further demanded shipment or refund concerning the "29 Defiant" transaction and directed that payment be made to the Jones Walker trust account. See id.

Shanghai Breeze filed the present action on July 11, 2022. See Record Document 1. Initially, Metal Shark was represented by different counsel, so Jones Walker did not immediately appear in this suit. Jones Walker's representation of GST formally concluded by letter dated September 29, 2023. See Record Document 87-2. Several months later,

in April 2024, attorneys from Jones Walker's New Orleans office enrolled as counsel for Metal Shark in this litigation. See Record Document 43.

Prior to that enrollment, Jones Walker sought a conflict waiver from Shanghai Breeze and GST. A written waiver dated April 30, 2024, was executed. See Record Document 86-1. The waiver contemplated consent by both Shanghai Breeze and GST individually to Jones Walker's representation of Metal Shark despite the prior representation. See id. GST signed the waiver on the signature line designated for Shanghai Breeze but did not separately sign the line bearing his individual name. See id. Shanghai Breeze alleges that the waiver was executed after discussions in which attorneys from Jones Walker's New Orleans office allegedly indicated that substitution of Louisiana counsel might facilitate settlement discussions. See Record Document 88 at 10.

Thereafter, this matter proceeded through extensive discovery, motion practice, and trial preparation. Throughout the litigation, Metal Shark has argued that GST's export-related criminal conduct was intertwined with the enforceability and legality of the contracts at issue. See Record Documents 11 at 18–20; 70 at 5–14. The case was ultimately set for bench trial on March 11, 2026. Shanghai Breeze previously sought leave for GST and Robert Wang to testify remotely from China, which this Court denied. See Record Document 84. Accordingly, GST was not expected to testify live at trial.

On the morning of trial, the Court raised *sua sponte* concerns regarding potential conflicts of interest arising from Jones Walker's prior representation of GST and its current representation of Metal Shark. The trial was upset, and the Court ordered briefing concerning Rules 1.7 and 1.9, the existence and scope of any waiver, and the effect of

any potential disqualification. See Record Document 86. Following the Court's order, GST declined to execute an additional personal waiver expressly reaffirming consent to Jones Walker's continued representation of Metal Shark. See Record Document 88.

**LAW AND ANALYSIS**

### I.      Applicable Standards

Motions to disqualify counsel are governed by state and national ethical standards adopted by the Court. See Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 266 (5th Cir. 2001). Although federal courts may adopt state rules of professional conduct as ethical standards, the question of whether and how those rules are applied remains a matter of federal law. See In re Am. Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992). A district court is "obliged to take measures against unethical conduct occurring in connection with any proceeding before it." Woods v. Covington Cnty. Bank, 537 F.2d 804, 810 (5th Cir. 1976). However, "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995).

The Western District of Louisiana has adopted the Louisiana Rules of Professional Conduct. See W.D. La. Local Rule 83.2.4W. A reviewing court also considers the motion governed by the ethical rules announced by the national profession, and the Fifth Circuit has recognized the ABA Model Rules of Professional Conduct. See In re ProEducation Intern., Inc., 587 F.3d 296, 299 (5th Cir. 2009). Accordingly, "most courts consider the state rules and the Model Rules in tandem." Martin v. Affordable Care, LLC, No. CV 21-0585, 2023 WL 4875878, at *3 (W.D. La. July 31, 2023).

Rule 1.7 of the Louisiana Rules of Professional Conduct governs duties owed to current clients, while Rule 1.9 governs duties owed to former clients. Because the record presents substantial questions regarding whether GST should be considered a current or former client at the time Jones Walker undertook representation of Metal Shark, the Court addresses both provisions.

## II.    Rule 1.7

Shanghai Breeze argues that Rule 1.7 applies because Jones Walker's representation of GST had not fully concluded when the firm undertook representation of Metal Shark in April 2024. Under Rule 1.7 of the Louisiana Rules of Professional Conduct, a lawyer shall not represent a client if such representation involves a "concurrent conflict of interest." Rule 1.7 states that a "concurrent conflict of interest" exists if:

> (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

A lawyer may represent a client despite the existence of a concurrent conflict of interest when:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

La. Rules of Prof'l Conduct 1.7(b).

The Court recognizes substantial authority supporting application of Rule 1.7 where representation technically remains ongoing at the time adverse representation commences. In Swear v. Lawson, the Eastern District of Louisiana held that a current-

client conflict existed where counsel attempted to withdraw from representing one client only after agreeing to represent another client in adverse litigation. See No. 15-6591, 2017 WL 11508947, at *5–8 (E.D. La. Jan. 19, 2017). The court emphasized that attorneys may not "jettison" one client to undertake a more favorable representation adverse to that client. Id. at *5. The court further noted that the attorney remained counsel of record and that the motion to withdraw had not yet been granted. Id.

Here, Jones Walker formally terminated its representation of GST by letter dated September 29, 2023. See Record Document 87-2. However, the Court also recognizes that there was never a formal motion of withdrawal filed or granted, so Shohat has remained counsel of record in the Florida criminal proceeding. See Docket Report, United States v. Ge Songtao, No. 3:19-cr-00192 (M.D. Fla.). Additionally, GST remained subject to supervised release obligations during at least part of the period when Jones Walker undertook representation of Metal Shark. See id. Under those circumstances, the Court cannot definitively conclude that the representation had fully terminated for purposes of Rule 1.7 at the time Jones Walker undertook representation of Metal Shark in April 2024. The Court does recognize, however, that the criminal proceeding had remained dormant for approximately two years before Jones Walker enrolled in this matter and has remained dormant since that time.

The Court further recognizes that Metal Shark has relied upon GST's criminal proceedings and related export-control issues in support of its defense that the contracts at issue were unlawful and unenforceable. See Record Document 11. Jones Walker previously represented GST in connection with those criminal proceedings and asserted contractual claims on GST's behalf concerning the same vessel transactions now before

6

this Court. See Record Document 88 at 21–22. Accordingly, the Court finds that the representation presents substantial concerns sufficient to implicate Rule 1.7(a).

In determining whether such conflict was capable of waiver under Rule 1.7(b), the Court considers the significant factual distinctions between this matter and Swear v. Lawson. See 2017 WL 11508947. Here, GST is not a party to this suit, there were no active proceedings in GST's criminal case when this suit was filed, and Jones Walker had issued a termination letter to GST months before enrolling for Metal Shark.

Assuming that Rule 1.7 applies, the Court finds that the conflict was not of the type prohibited from waiver under Rule 1.7(b). The representation did not involve the assertion of claims by one current client against another current client within the same litigation, and the Court cannot conclude that continued representation is prohibited by law or that Jones Walker could not reasonably believe it remains capable of providing competent and diligent representation of Metal Shark. Further, GST executed a written waiver plainly intended to permit Jones Walker's representation of Metal Shark despite the prior representation. Therefore, under the unique circumstances presented here, the conflict was capable of waiver through informed consent.

As discussed more fully below, the Court concludes that GST knowingly waived objection to the representation through execution of the waiver, prolonged acquiescence, and failure to timely object despite full awareness of Jones Walker's representation of Metal Shark.

### III.   Rule 1.9

The Court next considers the applicability of Rule 1.9. Under Rule 1.9(a),

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related

matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

In determining whether there is a conflict under Rule 1.9, the Court uses the Fifth Circuit's "substantial relationship" test announced in American Airlines. See 972 F.2d at 614. Under this test, courts examine whether the prior and current representations involve the same subject matters, issues, or causes of action. See id. The Fifth Circuit has clearly articulated that the substantial relationship test does not require "that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the trial." Id. at 616. Rather, the matters must only be substantially related. See id. Once a substantial relationship is established, "the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." Id. at 614. "A second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with the other members of his firm." Id. at 614 n. 1.

There is no genuine dispute that Jones Walker previously represented GST in connection with the Florida criminal prosecution and had an attorney-client relationship. Further, the September 13, 2021, demand letter demonstrates that Jones Walker acted on behalf of GST and Shanghai Breeze concerning the vessel transactions underlying this litigation. See Record Document 88 at 21–22. Although the criminal prosecution technically involved different vessels and a different manufacturer, Metal Shark itself has argued that GST's criminal conduct is intertwined with the enforceability and legality of the contracts at issue here. See Record Document 70. Metal Shark has relied upon those criminal proceedings in support of defenses that the contracts were unlawful and unenforceable.

The Court therefore finds that the prior representation and present litigation are substantially related within the meaning of Rule 1.9. The factual overlap is significant, the criminal case is relevant to Metal Shark's defense in this case, and Jones Walker previously asserted claims arising from these same vessel transactions on behalf of GST and Shanghai Breeze.

Under Fifth Circuit law, once the substantial relationship test is satisfied, the Court presumes that confidential information relevant to the representation was disclosed during the prior representation, and disqualification is required. See In re Am. Airlines, 972 F.2d at 614. However, the Court recognizes that subsequent Fifth Circuit authority has clarified that the discussion in American Airlines regarding the irrebuttable presumption being imputed to the entire firm was dicta and does not transform Rule 1.9 into a nonwaivable rule of automatic disqualification. See In re ProEducation Intern., Inc., 587 F.3d at 303–04. The Fifth Circuit further emphasized that disqualification rules should not be applied mechanically. See id. The Court also notes that the American Airlines case did not involve a potential waiver and was before the court on a motion to disqualify. See 972 F.2d 605. Here, by contrast, the Court raised the issue *sua sponte*, and there is a potential waiver. Accordingly, although the Court finds that the substantial relationship test is satisfied and that Rule 1.9 is implicated, that determination does not end the inquiry because Rule 1.9 conflicts may still be waived through informed consent confirmed in writing. The Court therefore turns to the issue of waiver.

## IV.   Waiver

Although the Court finds substantial concerns under both Rule 1.7 and Rule 1.9, the Court ultimately concludes that GST knowingly waived objection to Jones Walker's

representation of Metal Shark. The Court acknowledges that the April 30, 2024, written waiver presents technical deficiencies. See Record Document 86-1. Although the waiver plainly contemplated consent by both Shanghai Breeze and GST individually, GST signed only on the signature line designated for Shanghai Breeze and not on the separate line bearing his individual name. See id. Thus, the Court cannot conclude that the waiver strictly complied with the technical requirements of Rules 1.7 and 1.9.

However, federal courts within the Fifth Circuit recognize that objections to conflicts of interest may be waived through delay, acquiescence, and failure to timely object. In Flowers v. Heard, McElroy & Vestal, L.L.C., the court explained that when considering waiver in the disqualification context, courts examine "when the movant learned of the conflict, why the delay [in filing the motion to disqualify] occurred, whether the motion was delayed for tactical reasons, and whether disqualification would result in prejudice to the nonmoving party." 551 F. Supp. 3d 688, 702 (W.D. La. 2020). Similarly, the Fifth Circuit has recognized that the rules governing attorney conflicts are intended to preserve client confidence in candid communications with counsel, but that public confidence "should not be impaired where the former client, having every opportunity to do so, fails to object to a new relationship involving his former attorney, and where the unethical nature of the attorney's change of sides is not manifest but would need to be shown." In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 90 (5th Cir. 1976).

Louisiana courts likewise recognize that a party may waive objection to an alleged conflict through acquiescence and failure to timely object. See Marks v. Marks, 349 So.3d 1071, 1080–81 (La. App. 5 Cir. 2022) (considering delay and acquiescence in finding an implicit waiver). In Brasseaux v. Girouard, the Louisiana Third Circuit Court of Appeal

stated that a former client may "tacitly waive his objection and consent to his former counsel now representing a party with interests adverse to those involved in the lawyer's former representation of him." 214 So.2d 401, 407 (La. App. 3 Cir. 1968). The Brasseaux court further explained that a "[t]acit waiver has expressly been held in several instances to prevent invalidation of previous proceedings through the belated urge of cause for disqualification." Id. (internal citations omitted).

The circumstances presented here strongly support a finding of waiver through acquiescence. First, GST executed a written waiver plainly intended to permit Jones Walker's representation of Metal Shark despite the prior representation. See Record Document 86-1. Second, GST has known that Jones Walker represents Metal Shark in this litigation for approximately two years. During that period, the parties engaged in extensive discovery, motion practice, and trial preparation. Third, neither GST nor Shanghai Breeze moved to disqualify Jones Walker during that time. Rather, this issue was raised *sua sponte* by the Court on the morning that trial was supposed to commence. Up to that point, Shanghai Breeze appeared prepared to proceed to trial notwithstanding the potential conflict issue.

At this advanced stage of litigation, disqualification would impose substantial expense, delay, and disruption. Under the circumstances presented here, those consequences outweigh any limited benefit that disqualification would provide where GST knowingly acquiesced in the representation for an extended period and participated in the execution of a waiver plainly intended to authorize the representation.

The Court does not condone the circumstances or actions of counsel that resulted in this issue. Jones Walker should have exercised greater caution before undertaking

11

representation adverse to a current or former client in a matter so closely connected to prior representation by another office of the same firm. Likewise, the circumstances surrounding the attempted waiver demonstrate a lack of precision by all involved. Nevertheless, under the unique facts presented here, the Court concludes that GST knowingly and effectively waived objection to Jones Walker's representation through execution of the waiver, prolonged acquiescence, and failure to timely object despite full awareness of Jones Walker's representation of Metal Shark.

### V.    Shanghai Breeze's Counsel

Metal Shark argues that if Jones Walker possesses a conflict arising from its prior representation of GST, then counsel for Shanghai Breeze likewise possesses a conflict because Shanghai Breeze's interests may potentially diverge from GST's interests. The Court disagrees.

Rule 1.7 concerns conflicts arising where representation of one client is directly adverse to another client or where there exists a significant risk that counsel's representation will be materially limited by responsibilities owed to another client, former client, or third person. Here, the present record does not demonstrate that counsel for Shanghai Breeze faces such a conflict. Throughout this litigation, Shanghai Breeze's position has consistently been that the vessel transactions were legitimate commercial transactions unrelated to any unlawful export conspiracy. Shanghai Breeze has not attempted to shift liability to GST or otherwise distance itself from his conduct. Rather, Shanghai Breeze's claims and litigation strategy remain aligned with GST's position that the contracts were lawful and enforceable.

Although Metal Shark argues that GST's criminal conduct creates divergent interests between Shanghai Breeze and GST, the Court finds that argument speculative under the present posture of the case. Accordingly, the Court declines to find that counsel for Shanghai Breeze presently possesses a disqualifying concurrent conflict under Rule 1.7.

## CONCLUSION

Based on the reasons explained above, the Court finds that all counsel presently involved in the litigation are therefore permitted to remain counsel of record. An order setting this matter for a status conference to select a new trial date will issue separately.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of May, 2026.

JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT